# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **NATHAN FORREST**, | § | |
|     **PLAINTIFF**, | § § § | |
| v. | § § | Case No. 22-cv-00427-CVE-SH |
| 1. **ZEECO, INC.**, | § § | |
|     **DEFENDANT**. | § § | **JURY TRIAL REQUESTED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.
### INTRODUCTION

Plaintiff, Nathan Forrest ("Forrest" or "Plaintiff") files this Original Complaint against Defendant Zeeco, Inc. ("Zeeco" or "Defendant").

### II.
### PARTIES

1. Plaintiff is an individual and a citizen of Wagoneer County, Oklahoma.

2. Defendant is a domestic for-profit company with its principal place of business located at 22151 East 91st Street, Broken Arrow, OK 74014. Defendant may be served with process, including citation and a copy of this petition, by serving its registered agent for service of process, Mr. Darton J. Zink, 22151 E. 91st Street, Broken Arrow, OK 74014.

### III.
### JURISDICTION AND VENUE

3. The United States District Court for the Western District of Oklahoma has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the Americans with Disabilities Act, 42 U.S.C. §12101, *et. seq*. ("ADA") and the Family Medical Leave Act 29 U.S.C. §2601, *et. seq*.

4. The acts complained of herein were committed and had their principal effect against Plaintiff within the Western District of Oklahoma; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## IV.
## BACKGROUND FACTS

3. Defendant is an employer within the meaning of the ADA and the Oklahoma Anti-Discrimination Act ("OADA") and employs more than 501 employees.

4. Plaintiff started his employment with Defendant in August 2014.

5. Plaintiff was initially employed by Defendant as a Buyer, Level 2 reporting to Mr. Bob Murray, who was the supervisor of Pipe Fitting & Flanges.

6. In August 2014, Ms. Jane Martin was Defendant's Purchasing manager and Gene Konkler was Buyer Level 3.

7. Plaintiff was a highly regarded employee of Zeeco and made significant contributions to the Company from the start of his employment.

8. Plaintiff never had any issue raised with his performance or been spoken to about poor performance and was certainly never written up. In fact, Plaintiff was given multiple awards for the cost savings that he had created, and his annual reviews were outstanding and included bonuses for his performance.

9. In 2017 Plaintiff's direct supervisor Bob Murray retired and Ms. Iva Hilburn became Plaintiff's supervisor.

10. At about this same time Plaintiff was promoted to Buyer Level 3.

11. In July 2018 Plaintiff suffered a stroke.

12. Plaintiff was thereafter forced to use his accrued but unused paid time off for the days he was in the hospital recovering.

13. Plaintiff was further required to use paid time off to attend his doctors' appointments.

14. Thereafter Plaintiff's condition continued to deteriorate in large part due to the stress caused by his position, Defendant stopped communicating with him.

15. The attitude toward Plaintiff's work performance changed after Mr. Forrest returned to work from taking a leave based on his medical condition and started to express his needs for certain reasonable accommodations of his ongoing medical condition and discussing the limitations on his ability perform a number of life activities.

16. In September 2018, Plaintiff met with Ms. Martin to discuss the challenges he was dealing with in the performance of his assigned job duties due to his ongoing medical condition.

17. Instead of adjusting his responsibilities, however, Plaintiff was assigned the additional responsibility of training a new employee. Defendant further added to Plaintiff's duties by assigning him a scrap metal project which added 3-4 more hours of work per week to his duties.

18. In February 2019, even though he had no prior experience in doing so, Plaintiff was further asked to assume additional responsibilities for buying instrumentation gauges, transmitters, insulation, fasteners, bearings, fitters, janitorial supplies, and HS&E supplies.

19. In early 2020 Plaintiff again requested to have some responsibilities removed from his duties given the fact that Plaintiff was suffering from excessive stress which was in turn exacerbating his medical condition.

20. Defendant denied Plaintiff's request in this regard and instead wrote up Plaintiff for having a toxic attitude when he expressed his frustration with his added duties and the stress

that it was causing him. Defendant further directed Plaintiff to attend anger management classes, which Plaintiff completed.

21. Even after Plaintiff completed such classes, Defendant made not attempt to communicate with Plaintiff or to address his request for an accommodation.

22. Shortly thereafter, Ms. Martin resigned, and Ms. Kim Clare became the new Purchasing Manager and Plaintiff's supervisor.

23. In March 2020 Covid 19 hit and Plaintiff transitioned to working from home

24. Thereafter Ms. Clare added more duties to Plaintiff's already difficult workload.

25. Plaintiff met with Bill Sumner, Defendant's HR Director to directly inform him of Plaintiff's need for an accommodation of his ever-expanding work duties. Mr. Sumner stated that he was surprised to see Plaintiff because "[Plaintiff] was the happiest guy at Zeeco" as far as he knew.

26. When Defendant's HR department failed to take any action in response to Plaintiff's requests, Plaintiff went and spoke with the manager of Maintenance Department, Marshall Woods, regarding Plaintiff's interest in working in Maintenance Department and his past experience in working maintenance.

27. Defendant additionally took the initiative to speak with Will Smith, Defendant's Manager of HSE, about a position that Plaintiff had heard was coming open to express Plaintiff's interest in transferring to the Defendant's HSE department.

28. In March 2021, Plaintiff returned to work in Defendant's offices as instructed. Upon Ms. Clarke's arrival at the office Plaintiff asked Ms. Clarke if she could arrange a meeting with Bill Sumner so that they could discuss Plaintiff's needed accommodations.

29. During the meeting with Ms. Clarke and Mr. Sumner, Mr. Sumner proceeded to ask if there was anywhere Plaintiff would like to work to which Plaintiff reminded Mr. Sumner that Plaintiff had told his former manager, Jane Martin, multiple times that Plaintiff would like to work in maintenance or HSE.

30. Mr. Sumner said that Defendant didn't currently have any openings available, but Plaintiff could keep an eye out on the company website and if Plaintiff did see something that he was interested in to give him a call.

31. Mr. Sumner then handed Plaintiff his business card and asked Plaintiff to write a resignation letter because Defendant could no longer have Plaintiff work in his current position.

32. Defendant demanded that Plaintiff resign his employment and did nothing to determine what reasonable accommodations could be made that would allow Plaintiff to continue working. Likewise, Defendant did nothing to inquire about Plaintiff taking eligible leave under the Family Medical Leave Act and other applicable state and federal employment laws so as to allow him to address his medical condition.

33. Defendant completely failed to take any actions to reasonably accommodate Plaintiff. Likewise, Defendant failed in its duty to allow Plaintiff the opportunity to pursue a leave of absence.

34. By wholly failing to pursue the interactive process to determine the availability of an accommodation and/or to even consider whether Plaintiff qualified for leave under the FMLA, Defendant's actions (or failure to act) directly violated Plaintiff's rights under applicable law.

35. Furthermore, the direction to Plaintiff to have him just submit his resignation when he stated the issues he was having in the performance of some of his job duties,

demonstrates a willful and intentional disregard for the protections to which Mr. Forrest was entitled under state and federal law.

## V.
## CONDITIONS PRECEDENT

36. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission in December 2021. The EEOC maintains a work-share agreement with Oklahoma's Office of Civil Rights Enforcement ("OCRE") such that the filing with the EEOC is sufficient to have timely filing with the OCRE.

37. Plaintiff has timely exhausted all administrative remedies.

## VI.
## CAUSES OF ACTION

**A.  Cause of Action—Disability Discrimination—Failure to Engage in Required Interactive Process – ADA and OADA**

38. Plaintiff incorporates each of the foregoing paragraphs.

39. Plaintiff informed Defendant of Plaintiff's disability and need for reasonable medical accommodation.

40. Defendant refused to engage in the required interactive process with Plaintiff concerning Plaintiff's request for a reasonable medical accommodation.

41. Defendant's actions violated the ADA and OADA.

**B.  Cause of Action—Disability Discrimination—Failure to Accommodate—ADA and OADA**

42. Plaintiff incorporates each of the foregoing paragraphs.

43. Plaintiff requested a reasonable medical accommodation.

44. Defendant refused to provide Plaintiff with a reasonable medical accommodation.

45. Defendant's actions violated the ADA and OADA.

C. **Cause of Action—Disability Discrimination—ADA and OADA**

46. Plaintiff incorporates each of the foregoing paragraphs.

47. Defendant discriminated against Plaintiff because of Plaintiff's disability and/or perceived disability and/or record of a disability and/or because it regarded Plaintiff as disabled.

48. Defendant's actions violated ADA and OADA.

D. **Cause of Action—Disability Discrimination—Discriminatory Discharge—ADA and OADA**

49. Plaintiff incorporates each of the foregoing paragraphs.

50. Defendant terminated Plaintiff's employment because of Plaintiff's disability and/or perceived disability and/or record of a disability and/or because it regarded Plaintiff as disabled.

51. Defendant's / Defendants' actions violated the ADA and OADA.

E. **Cause of Action—Unlawful Retaliation—ADA and OADA**

52. Plaintiff incorporates each of the foregoing paragraphs.

53. Plaintiff engaged in protected activity as set forth in ADA and OADA.

54. In response, Defendant retaliated against Plaintiff and ultimately terminated Plaintiff's employment.

55. Defendant's actions violated the ADA and OADA.

F. **Cause of Action--FMLA Interference**

56. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

57. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA.

58. At all relevant times, Defendant met the definition of an "employer" under the FMLA because Defendant had 50 or more employees during the current and/or preceding calendar year.

59. Defendant violated the FMLA by unlawfully interfering with, restraining, and/or denying the exercises of Plaintiff's FMLA rights by, *inter alia*, by denying Plaintiff the right to pursue the benefits to which he was entitled under the FMLA.

60. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief, including but not limited to recovery of his attorneys' fees, costs, in addition to interest at the prevailing interest rate.

61. Defendant's unlawful action constitute bad faith, malicious, willful, and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

**G.     Cause of Action -- FMLA Retaliation**

62. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

63. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA.

64. At all relevant times, Defendant met the definition of an "employer" under the FMLA because Defendant had 50 or more employees during the current and/or preceding calendar year.

65. Defendant violated the FMLA by terminating Plaintiff's employment in retaliation for Plaintiff's exercise of rights protected by the FMLA.

66. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an

award of monetary damages and other relief, including but not limited to recovery of his attorneys' fees, costs, in addition to interest at the prevailing interest rate.

67. Defendant's unlawful action constitute bad faith, malicious, willful, and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## VII.
## DAMAGES

68. Plaintiff incorporates each of the foregoing paragraphs.

69. Defendant's actions violated the ADA, OADA, and the FMLA, which entitles Plaintiff to recover from Defendant back pay, front pay, compensatory damages, liquidated damages, as well as pre-judgment and post-judgment interest.

70. Because Defendant's actions were done with malice and/or reckless indifference to Plaintiff's state-protected rights, Plaintiff is entitled to recover from Defendant liquidated damages.

71. Plaintiff seeks all damages available under the ADA, OADA and the FMLA

## VIII.
## ATTORNEYS' FEES AND COSTS

72. Plaintiff incorporates each of the foregoing paragraphs.

73. Plaintiff retained the services of undersigned counsel to prosecute Plaintiff's claims.

74. Pursuant to the ADA, OADA and the FMLA, Plaintiff is entitled to recover a reasonable attorneys' fee from Defendant, including reasonable expert fees.

## IX.
## RESPONDEAT SUPERIOR

75. Plaintiff incorporates each of the foregoing paragraphs.

76. Defendants are liable for the acts and/or omissions of their respective agents, representatives, employees, servants, and officers.

## X.
## JURY TRIAL

77. Plaintiff incorporates each of the foregoing paragraphs.

78. Plaintiff demands a jury trial.

## XI.
## PRAYER

79. Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment against Defendant, jointly and severally, awarding Plaintiff:

    A. Back pay and front pay (including benefits);

    B. Compensatory damages;

    C. Reasonable attorneys' fees and expert fees;

    D. Court costs;

    E. Pre-judgment and post-judgment interest at the rate set by law; and

    F. All legal or equitable relief this Court deems proper.

Respectfully submitted,

/s/ Mark D. Downey
**MARK D. DOWNEY**
Texas Bar No. 00793637
mdowney@dlawgrp.com
**DOWNEY LAW/MARK D. DOWNEY PLLC**
5308 Ashbrook Dr.

Houston, Texas 77081<br>
214-764-7279<br>
Fax: 214-764-0810<br>
**ATTORNEYS FOR PLAINTIFF**