# 𝔘nited 𝔖tates 𝔇istrict 𝔠ourt
## for the 𝔑orthern 𝔇istrict of 𝔒klahoma

Case No. 22-cv-427-JDR-SH

NATHAN FORREST,

*Plaintiff,*

*versus*

ZEECO, INC.,

*Defendant.*

## OPINION AND ORDER

After suffering a stroke, Mr. Forrest took time away from his work at Zeeco, Inc. to recover, attend appointments, and receive follow-up care. He was cleared to return to work without restrictions. Later, Zeeco allegedly increased Mr. Forrest's workload, placed him on a performance improvement plan, and issued a final written warning. Mr. Forrest resigned rather than sign the written warning and sued Zeeco for violating the Americans with Disabilities Act, the Family Medical Leave Act, and the Oklahoma Anti-Discrimination Act. *See* Dkt. 2. The question currently before the Court is whether, based on the undisputed facts presented in Zeeco's motion for summary judgment [Dkt. 38], Mr. Forrest can prevail on any of these claims. The Court answers this question in the negative and grants Zeeco's motion.

### I

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). Ordinarily, a Court reviewing a motion for summary judgment will

No. 22-cv-427

resolve all factual disputes in favor of the non-moving party and construe all reasonable inferences in that party's favor. *Id.* But this is not an ordinary case because Mr. Forrest has not complied with this Court's local rules, which require a party responding to a motion for summary judgment to (1) identify the facts in dispute by separately numbered paragraphs, and (2) cite the evidentiary material that supports its position as to each allegedly disputed fact. *See* N.D. Okla. Civ. R. 56-1 (requiring the responding party to "state any fact that is disputed," and provide a citation to "any evidentiary material" that supports its position). Parties practicing before this the Court are warned that "[a]ll material facts" set forth in a moving party's statement of undisputed facts "shall be deemed admitted for the purpose of summary judgment unless specifically controverted . . . using the procedures set forth" in Local Rule 56-1.

Zeeco presented statements of undisputed fact that are appropriately supported by evidence of record. Dkt. 38 at 8-12.[1] Mr. Forrest failed to contest those statements using the procedures in Local Rule 56-1. In view of that failure, the Court will treat as admitted all facts set forth in Zeeco's motion that are not controverted by a readily identifiable portion of the record and will not conduct an independent search of the record to determine whether a case could be made that the facts are not as Zeeco presents them. *See Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008); *see also Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (recognizing that the responding party must identify any factual disputes with particularity).

## II

Mr. Forrest was hired in 2014 to work as a buyer in Zeeco's purchasing department. Dkt. 38 at 8. His job duties expanded and changed over time, and Mr. Forrest was eventually promoted to the position of Buyer III, the

---

[1] All citations utilize CMECF pagination.

No. 22-cv-427

highest buyer position at Zeeco. *Id.* There is no record in this case of any concerns with Mr. Forrest's work prior to July 2018.

On July 11, 2018, Mr. Forrest suffered a stroke. *Id.* at 9. He was hospitalized for two days. Dkt. 38-2 at 113. Soon afterward, Mr. Forrest's physician provided Zeeco with an FMLA Certification Form advising that Mr. Forrest was released to return to work but might need to work four-hour days for the period beginning July 11, 2018, and ending January 10, 2019. Dkt. 38 at 9. The form also indicated that Mr. Forrest might need therapy two or three times per week and a follow-up surgery that would require him to take time off for a "few days." Dkt. 38-2 at 114. An email sent by Dr. Larry Shepherd, who treated Mr. Forrest, stated that Mr. Forrest was clear to return to work on July 18, 2018. Dkt. 38-2 at 118. That email did not place any restrictions on Mr. Forrest. *Id.*; Dkt. 38 at 9. Mr. Forrest returned to work. He was not reprimanded for taking time off, and when he requested additional time off, his requests were granted. Dkt. 38 at 9.

Nearly two years later, in June 2020, Mr. Forrest was placed on a performance improvement plan to address Zeeco's concerns about his attitude, his ability to manage his anger, and disparaging comments he had made about his co-workers. Dkt. 38 at 9. As part of the plan, Mr. Forrest was required to complete counseling through Zeeco's employee assistance program. Mr. Forrest successfully completed the plan and the counseling, which he found to be beneficial. *Id.* at 10.

Zeeco considered Mr. Forrest's job performance to be satisfactory until early 2021, when his supervisor, Kim Clare, determined that Mr. Forrest was not performing successfully in several areas. She issued a final written warning to Mr. Forrest in February 2021 with the expectation that Mr. Forrest would comply with the warning and satisfactorily perform the duties described in that warning. *Id.* But Mr. Forrest refused to sign the written warning. *Id.*; Dkt. 38-3. Instead, at a March 1, 2021 meeting with Ms. Clare and

3

No. 22-cv-427

Zeeco's Human Resources Manager, Bill Summar, Mr. Forrest stated that he was resigning from his position effective immediately. Dkt. 38 at 10.

Zeeco alleges that Mr. Forrest never indicated during the March 1 meeting that he had a physical or mental impairment preventing him from working as a Buyer III. *Id.* Nor did Mr. Forrest request a leave of absence. Dkt. 38-3 at 3. Mr. Forrest did express an interest in looking for other open positions at Zeeco, *id.* at 2, but there is no evidence that there were any open positions in the departments Mr. Forrest was interested in at the time of his resignation, nor is there any evidence that Mr. Forrest ever applied for a different position with Zeeco. Dkt. 38 at 11.

Mr. Forrest alleges that, after his stroke, Zeeco assigned him more work than other employees in the same position, and that this increase in workload, together with his supervisor's management style, caused him significant stress. Dkt. 40 at 4-6. He contends that he had hoped to have a meeting with his supervisors on March 1, 2021, to address concerns with his workload and the stress it was causing him. *Id.* at 7. Mr. Forrest was unable to resolve his concerns and, as a result, resigned from Zeeco.

Mr. Forrest filed a charge of discrimination with the EEOC on December 10, 2021, and later sued Zeeco for violating the ADA, the FMLA, and the ODEA. He argues that Zeeco discriminated against him by assigning him more work than his similarly situated colleagues; that Zeeco failed to provide sufficient notice to him of his FMLA rights; that Zeeco discriminated against him by issuing the performance improvement plan and the final written warning; that Zeeco failed to engage in an interactive process to accommodate his disability during the March 1 meeting; and that all of Zeeco's actions, taken together, created working conditions that were so intolerable that he had no choice but to resign. Zeeco filed a motion for summary judgment on all claims, which Mr. Forrest opposes. Dkts. 38, 40.

No. 22-cv-427

### III

Zeeco opens its brief by arguing that Mr. Forrest's OADA claims, portions of his ADA claims, and portions of his FMLA claims are time-barred. Dkt. 38 at 13-14. Mr. Forrest does little to respond to these arguments. *See generally* Dkt. 40. The Court agrees with Zeeco on all three points.

Mr. Forrest cannot pursue his OADA claims because they were not the subject of a timely filed charge of discrimination. To have standing to pursue a discrimination or retaliation claim under the OADA, a plaintiff must file a discrimination charge with either the Attorney General's Office of Civil Rights Enforcement or the Equal Employment Opportunity Commission within 180 days of the alleged discrimination. *See* Okla. Stat. tit. 25, § 1350(B). Although Mr. Forrest's employment with Zeeco ended on March 1, 2021, he did not file a charge of discrimination with the EEOC until December 10, 2021, more than 280 days after the last possible act that gave rise to his claims of discrimination. *See* Dkt. 38 at 11, 12 (statements of fact nos. 31, 37). These undisputed facts preclude recovery under the OADA, and Zeeco is entitled to summary judgment on that claim.

Mr. Forrest's ADA claims are also barred to the extent they arise out of actions that took place on or before February 12, 2021. An individual seeking relief under the ADA must "file a timely administrative claim within 300 days of the challenged action. The filing is a prerequisite to a civil suit . . . and a claim is time-barred if it is not filed within these time limits." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) (footnote and citations omitted).[2] Zeeco seeks to prevent Mr. Forrest from seeking relief for conduct that took place more than 300 days prior to December 10, 2021 (when Mr. Forrest filed his administrative claim). Dkt. 38 at 13-14. Mr. Forrest does not

---

[2] *See* 42 U.S.C. § 12117(a) (incorporating the procedures set forth in Title VII into the ADA); 42 U.S.C. § 2000e–5(e)(1) (setting forth 300-day time limit for filing a charge of discrimination).

No. 22-cv-427

argue that he can recover for conduct outside the 300-day window. Instead, he contends that some of Zeeco's alleged misconduct took place within that window. *See* Dkt. 40 at 10, 24. Because Mr. Forrest has not provided any evidence or arguments that would permit the Court to consider conduct occurring on or before February 12, 2021,[3] the Court grants Zeeco's motion and limits the scope Mr. Forrest's ADA claim accordingly.

Mr. Forrest's FMLA-interference claims are also barred in part. A three-year statute of limitations applies to claims arising from willful FMLA violations. *See Bass v. Potter*, 522 F.3d 1098, 1104 (10th Cir. 2008). Zeeco seeks to prevent Mr. Forrest from recovering for conduct that took place outside that limitations period. Dkt. 38 at 14 (discussing events that took place in 2018 and 2019). In response, Mr. Forrest argues only that his FMLA claims are timely because they "are based on the events in 2020 and 2021." Dkt. 40 at 23-24. Because Mr. Forrest offers no argument or evidence suggesting that the Court could consider conduct that took place prior to September 30, 2019, the Court grants Zeeco's motion to limit the scope of Mr. Forrest's FMLA claims.

IV

The Court now turns to Zeeco's substantive challenges to Mr. Forrest's remaining claims, all of which arise under federal law. Mr. Forrest brings claims against Zeeco for failure to engage in the interactive process in violation of the ADA (Count I), failure to accommodate in violation of the ADA (Count II); disability discrimination and wrongful discharge in violation of the ADA (Counts III and IV); unlawful retaliation in violation of the ADA (Count V); FMLA interference (Count VI); and FMLA retaliation (Count

---

[3] Courts may consider conduct that predates the statutory period in certain cases, such as when the plaintiff alleges that he was the victim of a continuing discriminatory policy or practice. *Cf. Davidson*, 337 F.3d at 1183-84. Mr. Forrest does not argue that the continuing-violation exception applies in this case.

No. 22-cv-427

VII).[4] Zeeco has moved for summary judgment on all eight claims. Dkt. 38. Mr. Forrest acknowledges that summary judgment is appropriate with respect to Count V, but he otherwise disputes Zeeco's motion. *See* Dkt. 40 at 27 ("With the sole exception of Mr. Forrest's claim for retaliation under the Americans with Disabilities Act, Defendant's Motion for summary judgment must be denied."). The Court will address each claim in turn.

### A

Zeeco is entitled to summary judgment on Mr. Forrest's claim that it violated the ADA by failing to engage in an interactive process to accommodate Mr. Forrest's disability. "When an employee requests an accommodation for a qualifying disability, the Americans with Disabilities Act requires employers to participate in an 'interactive process' . . . to determine a mutually suitable accommodation." *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1201 (10th Cir. 2023) (quoting *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020)). But there is no independent cause of action for failure to engage in that process. *Id.* (holding that "failure to engage in an interactive process is not independently actionable"). Zeeco's alleged failure to engage in a good-faith, back-and-forth discussion to identify Mr. Forrest's precise limitations and provide an appropriate accommodation may be relevant to Mr. Forrest's failure-to-accommodate claim, but it does not provide an independent basis for relief. *See id.*; *see also Aubrey*, 975 F.3d at 1010. Accordingly, the Court grants Zeeco's motion for summary judgment on this claim.

### B

Mr. Forrest's failure-to-accommodate claim fares no better. To succeed on this claim, Mr. Forrest must show that (1) he is disabled for purposes of the ADA; (2) he is qualified to perform the essential functions of his job,

---

[4] In his complaint, Mr. Forrest alleges that Counts I through V arise under both the ADA and the OADA. *See* Dkt. 2. Because the Court has granted Zeeco's motion for summary judgment with respect to Mr. Forrest's OADA claims on other grounds, *see* Section III, *supra*, the Court will not address the merits of those claims.

No. 22-cv-427

with or without reasonable accommodation; and (3) his employer discrimi-
nated against him by refusing to provide him with a reasonable accommoda-
tion. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261 (10th Cir. 2009)
(setting forth prima face claim of discrimination under the ADA); *Punt v.
Kelly Servs.*, 862 F.3d 1040, 1048, 1050 (10th Cir. 2017) (recognizing that fail-
ure to accommodate is a form of discrimination under 42 U.S.C. §
12112(b)(5)(A)).[5] Each of these elements is essential. *Hennagir*, 587 F.3d at
1262-63. If Mr. Forrest fails to set forth facts to support even one of them,
summary judgment must be entered in Zeeco's favor. *E.g., id.* (granting sum-
mary judgment without addressing all three elements because the plaintiff
had failed to establish one of them).

The Court first turns to the question of whether Mr. Forrest is disa-
bled. A person is considered disabled under the ADA if he (1) has "a physical
or mental impairment that substantially limits one or more major life activi-
ties," (2) has "a record of such an impairment," or (3) is "regarded as having
such an impairment." 42 U.S.C. § 12102(1); *see Tate v. Farmland Indus., Inc.*,
268 F.3d 989, 992 (10th Cir. 2001). Mr. Forrest does not identify which of
these three definitions apply to him. *See generally* Dkt. 40. The Court con-
cludes that none of them do.

There is no evidence that Mr. Forrest has "a physical or mental im-
pairment that substantially limits one or more major life activities." 42 U.S.C.
§ 12102(1). When considering whether a plaintiff fits within this definition, a
court must determine whether the plaintiff suffers from a physical or mental
impairment, identify the major life activities affected by the impairment, and

---

[5] The parties have treated Mr. Forrest's failure-to-accommodate claim and his dis-
crimination claims as distinct causes of action even though they arise under the same stat-
utory provision. The Court will do the same. *E.g., Bartee v. Michelin N. Am., Inc.*, 374 F.3d
906, 912, n.5 (10th Cir. 2004) (recognizing that failure-to-accommodate and discrimination
claims may be "alternative methods of proving one statutory cause of action" but address-
ing them separately on appeal).

No. 22-cv-427

decide whether the impairment "substantially limits" any of those activities. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Mr. Forrest alleges that he suffers from high blood pressure,[6] stress, anxiety, and physical, cognitive, and emotional decline. Dkt. 40 at 4-6. But he has not identified the major life activities affected by these impairments,[7] presented evidence as to how these impairments limit his day-to-day activities, or described how his abilities compare to those of the general population. Without this evidence, there is nothing to support the conclusion that Mr. Forrest is disabled under the first definition in § 12102(1). *See Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001) (affirming grant of summary judgment where the plaintiff failed to produce evidence that a forty-pound lifting restriction was "substantially limiting"); *Harmon v. Sprint United Mgmt. Corp.*, 264 F. Supp. 2d 964, 969 (D. Kan. 2003) (granting summary judgment where the plaintiff presented no evidence that he could not perform, or was significantly restricted in performing, any major life activities when compared to the general population).

Mr. Forrest has also failed to present evidence that has a record of a substantially limiting impairment under § 12102(1). "To have a record of [a substantially limiting] impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity." *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir. 1999) (citations omitted). The problem of proof that prevents Mr. Forrest from establishing a substantially limiting impairment also precludes him from establishing a record of one. *Cf. Lusk*, 238 F.3d at 1241 (concluding that because the plaintiff's records showed evidence of a lifting restriction and "nothing more" there was no record of an impairment that substantially limited a major

---

[6] Mr. Forrest is required to monitor his blood pressure and lie down when his blood pressure becomes elevated.

[7] *See* Dkt. 40 at 11 (summarily concluding that Mr. Forrest's limitations affected unidentified life activities).

9

No. 22-cv-427

life activity). Mr. Forrest has not identified a "record" of a disabling impairment that affects a major life activity, nor has he explained how Zeeco relied on that record. Mr. Forrest's "failure to present this evidence is alone sufficient to conclude that he does not qualify as having a record of a disabling impairment under the ADA." *Harmon*, 264 F. Supp. 2d at 970 (citing *Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1160 (10th Cir. 2002)).[8]

There is likewise no evidence that Zeeco regarded Mr. Forrest as having a disability. A person is regarded as having a disability under § 12102(1) if his employer (1) *mistakenly* believes he has a substantially limiting impairment that he does not have, or (2) *mistakenly* believes that he has a limiting impairment when the impairment is not so limiting. *Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, 853 F.3d 1150, 1156 (10th Cir. 2017). In either case, it is essential that the employer entertain a misconception about the individual's abilities. *Id.*; *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 499 (10th Cir. 2000). Mr. Forrest presents no evidence of a misconception on Zeeco's part. *Cf.* Dkt. 40 at 11 (arguing that Zeeco accurately believed Mr. Forrest to be disabled). Nor has he presented any evidence that Zeeco treated Mr. Forrest

---

[8] Mr. Forrest suffered a stroke on July 11, 2018, and was hospitalized for two days. Dkt. 38-2 at 113. His physician indicated that Mr. Forrest might need to work half-days periodically through January 10, 2019, and would need to take a few days off for a future surgery. *Id.* at 114. A separate email suggests Mr. Forrest was released to return to work with no restrictions on July 18, 2018. *Id.* at 118. The record pertaining to Mr. Forrest's hospital stays and subsequent treatment is insufficient to permit this Court or a jury to conclude that Mr. Forrest had a limitation that substantially limited a major life activity, or a record of such a limitation. *See Rakity*, 302 F.3d at 1161 (holding that the plaintiff's "record of missed work due to surgery, short hospital stays, and rehabilitation does not, by itself, imply he has a record of substantial limitation in working"); *Sorensen*, 194 F.3d at 1087 (finding that the plaintiff was not disabled as a result of her five-day hospitalization and subsequent recovery period, during which she could not perform any life activities, when she was able to return to work eight days after her release and no longer had an impairment substantially limiting a major life activity); *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 412 F. Supp. 2d 1193, 1198 (D. Kan. 2006), aff'd, 483 F.3d 1086 (10th Cir. 2007) (concluding that a doctor's note clearing the plaintiff to return to work without restrictions "vitiate[d] any possible allegation of a long-term disability").

No. 22-cv-427

as disabled.[9] Because Mr. Forrest has failed to point to evidence that would permit a jury to find that he is disabled under this or any other definition in § 12102(1), his failure-to-accommodate claim cannot proceed to trial.

Even if the evidence could support a finding that Mr. Forrest is disabled, his claim would still fail because he has not presented evidence that Zeeco failed to reasonably accommodate his disability. *Hennagir*, 587 F.3d at 1261. A plaintiff must show that he *requested* an accommodation before he may sue his employer for failing to provide one. *Punt*, 862 F.3d at 1050. Mr. Forrest has, at most, shown that he met with his supervisors to discuss his job expectations, his workload, and the stress and damage his job was causing him, but there is no evidence that he expressly requested a modification of his nonessential job duties, a transfer, or any other accommodation. Dkt. 40 at 7-8. Absent that evidence, his failure-to-accommodate claim cannot proceed. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1206 (10th Cir. 2018) (recognizing that "a failure to accommodate claim does not arise until after" the employee requests an accommodation (citation and quotation marks omitted)).

Mr. Forrest's failure-to-accommodate claim fails for the additional reason that he has not specifically identified the accommodation that Zeeco unreasonably failed to make. A plaintiff cannot generically allege that an accommodation should have been made; at the summary judgment stage, the "plaintiff carries the burden of demonstrating the existence of a facially reasonable accommodation." *Hennagir*, 587 F.3d at 1264. Only after the plaintiff clears this hurdle will the burden shift to the employer to show why it could not grant the accommodation. *Id.* Mr. Forrest does not pass this preliminary barrier. Mr. Forrest argues that he tried to have a discussion with Zeeco about

---

[9] The fact that Zeeco encouraged Mr. Forrest to seek out and apply for open positions shows that Zeeco *did not* regard Mr. Forrest as disabled. *Cf. Nealey v. Water Dist. No. 1 of Johnson Cnty.*, 324 F. App'x 744, 749 (10th Cir. 2009) (holding that there was no evidence that the defendant regarded the plaintiff as disabled when it offered her the opportunity to return to work in a different full-time position).

No. 22-cv-427

whether everything he was doing was "actually essential" [Dkt. 40 at 15], but there is no evidence that he asked to be relieved of any non-essential duties. *Cf. Mathews v. Denver Post*, 263 F.3d 1164, 1168–69 (10th Cir. 2001) (recognizing that "an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job"). And although Mr. Forrest now claims that Zeeco should have transferred him to another position, there is no evidence that he affirmatively requested reassignment, that there were vacant positions open at or around the time he resigned, or that he was qualified to perform the essential functions of those positions. *See Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999) (recognizing that, to establish a prima facie case, the plaintiff must show that he requested accommodation "by reassignment to a vacant position" for which he was qualified and "specifically identify and show" that the position was "available within the company at or about the time the request for reassignment was made"). Mr. Forrest's claims cannot proceed without evidence of the accommodation that was available to him but refused by Zeeco.

Mr. Forrest has failed to present evidence that would permit a jury to find that he is disabled for purposes of the ADA, and he has likewise failed to present evidence that he requested and was denied a facially reasonable accommodation for which he was qualified. Because he cannot establish these essential elements, Zeeco is entitled to judgment as a matter of law on Mr. Forrest's failure-to-accommodate claim.

## C

Mr. Forrest's disparate-treatment claim[10] cannot survive for the same reason that his failure-to-accommodate claim could not proceed. As before,

---

[10] Mr. Forrest asserts both a general discrimination claim as well as a claim for discriminatory discharge. *See* Dkt. 2 at 7. Because wrongful discharge is a form of discrimination, the Court addresses these claims together.

No. 22-cv-427

Mr. Forrest has the burden of setting forth a prima facie case of discrimination by presenting evidence from which a jury could find that (1) he is disabled for purposes of the ADA; (2) he can perform the essential functions of his job with or without reasonable accommodation, and (3) Zeeco discriminated against him because of his disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). And as discussed in Section IV(B), *supra*, Mr. Forrest cannot show that he is disabled for purposes of the ADA. Because he has failed to establish this essential element, Zeeco is entitled to summary judgment on Mr. Forrest's discrimination claim. *Hennagir*, 587 F.3d at 1261-62.

Even if Mr. Forrest could prove that he is disabled under the ADA, summary judgment would be appropriate because there is no evidence of actionable discrimination by Zeeco. "[D]isparate-treatment claims under the ADA allege that the employer discriminated against the employee by acting in a discriminatory manner." *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 796 (10th Cir. 2020) (emphasis omitted). "In order to demonstrate 'discrimination,' a plaintiff generally must show that he has suffered an 'adverse employment action because of the disability.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (quoting *Mathews*, 263 F.3d at 1167).

There is no evidence of any adverse employment action by Zeeco.[11] Mr. Forrest alleges that Zeeco assigned him a greater number of commodities

---

[11] Recently, the Supreme Court cautioned that courts must not impose a "heightened threshold of harm" when analyzing claims of disparate treatment under Title VII (and, by extension, the ADA and other statutes construed congruently therewith). *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 353 (2024); *see also C.R. England, Inc.*, 644 F.3d at 1038, n.11 (recognizing that the ADA and Title VII are generally interpreted consistently). In doing so, the Court indicated that the Tenth Circuit has previously employed an inappropriately high standard. *See Muldrow*, 601 U.S. at 346, n.1 (quoting the "significant change" language in *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)); *see also Christians in the Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, No. 24-2072, 2025 WL 2114295, at *4, n.6 (10th Cir. July 29, 2025) (discussing the "lower bar"

*(footnote continues)*

No. 22-cv-427

than any other buyer in his department [Dkt. 40 at 18], but he has failed to present any evidence that, as a result, his overall workload was greater than the workloads of his colleagues. Without that evidence, he cannot prove he was treated differently than his coworkers. *Cf. Jones v. Barnhart*, 349 F.3d 1260, 1269-70 (10th Cir. 2003) (recognizing that "an increased workload might constitute an adverse employment action" but holding that the plaintiff's generalized, unsubstantiated claims of thicker files did "not rise to the level of an adverse employment action").[12]

Nor can Mr. Forrest establish the existence of an adverse employment action by pointing to the final written warning issued by Zeeco in February 2021.[13] Warning letters and reprimands can support a prima facie case of discrimination when they "adversely affect[ ] the terms and conditions of the plaintiff's employment" by, for example increasing the likelihood that a plaintiff will be terminated or impacting his future employment opportunities. *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005).[14] But there is no evidence that written warning issued by Zeeco increased Mr.

---

applicable after *Muldrow*). The Court is mindful of *Muldrow*'s holding that, to be actionable, an employer's action "must have left [the plaintiff] worse off, but need not have left [him] significantly so." *Muldrow*, 602 U.S. at 359. To the extent that this opinion relies on Tenth Circuit precedent that predates *Muldrow*, it does so without relying on the prior legal standard employed in this Circuit, recognizing that Mr. Forrest has a problem of proof that would preclude recovery under either the current or the former standard.

[12] *Cf. also Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022) (holding that realignment of sales territory could not establish an adverse employment action in the absence of evidence showing that the plaintiff was affected in a way that her colleagues were not); *Humbles v. Principi*, 141 F. App'x 709, 711-12 (10th Cir. 2005) (finding no adverse employment action where the plaintiff "failed to show his workload increased" in relation to other employees' workloads).

[13] To the extent Mr. Forrest claims that Zeeco discriminated against him by placing him on a performance improvement plan in June 2020, that claim is time-barred. *See* Section III, *supra*.

[14] *Cf. Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998) (finding an adverse employment action where the "record indicate[d] that the more warnings an employee received, the more likely he or she was to be terminated").

No. 22-cv-427

Forrest's chances of termination, limited his opportunities for transfer or advancement, or made Mr. Forrest "worse off" in any other way. *Muldrow*, 601 U.S. at 359. To the contrary, the evidence shows that, notwithstanding the written warning, Mr. Forrest could have continued working at Zeeco and was invited to apply for other positions at the company. Dkt. 38 at 10-11 (statements of fact nos. 24, 27). A jury could not find that the final written warning constituted an adverse employment action in the absence of any evidence or explanation as to how that warning made Mr. Forrest "worse off" than he was before. *Muldrow*, 601 U.S. at 359; *cf. Payan v. UPS*, 905 F.3d 1162, 1174 (10th Cir. 2018) (concluding that "placement on an employee improvement plan alone does not qualify as a materially adverse action").

Mr. Forrest attempts to salvage his claim by arguing that he was constructively discharged by Zeeco. Constructive discharge is a type of adverse employment action that can give rise to relief under the ADA. *See Rivero v. Bd. of Regents of Univ. of New Mexico*, 950 F.3d 754, 761 (10th Cir. 2020). An employee who resigns from his position may demonstrate that he was constructively discharged by showing that the discrimination he experienced was so severe that he had no choice but to quit. *Id.* (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016) and *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998)). But Mr. Forrest has not cited any cases suggesting that an employee who is placed on a performance improvement plan, given a final written warning, and assigned different (but not necessarily more excessive) responsibilities than his co-workers experiences the type of "objectively intolerable" conditions that can establish constructive discharge. *Sanchez*, 164 F.3d at 534. And this Court could not find any support for the proposition that the conditions Mr. Forrest complains of, individually or collectively, rendered his employment so intolerable that he had no choice but to resign. *Cf. Rivero,* 950 F.3d at 761 (concluding that a reasonable person would not "find a job intolerable because of something that happened to him three years earlier"); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790 (10th Cir. 2007) (concluding

No. 22-cv-427

that evidence of harassment, allegedly unfair warning notice, and new pay plan was not sufficient to show that the plaintiff's working conditions were intolerable). The Court concludes that Mr. Forrest has failed to present evidence that he was constructively discharged or otherwise subjected to an adverse employment action. Because he cannot establish this essential element, Zeeco is entitled to summary judgment on his discrimination claim.

## D

The Court further holds that Zeeco is also entitled to summary judgment on Mr. Forrest's claim for retaliation under the FMLA. To set forth a claim for retaliation under that act, Mr. Forrest "must show '(1) that he engaged in protected [activity], (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *5 (10th Cir. Aug. 30, 2023) (quoting *Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021)). In the context of an FMLA-retaliation claim, a "material adverse action" is one that would likely "dissuade a reasonable worker from making or supporting a charge of discrimination." *Ford*, 2023 WL 5606233, at *5 (citation and quotation marks omitted).[15]

For the reasons discussed in Section IV(C), *supra*, Mr. Forrest has failed to demonstrate that he was subjected to an adverse employment action. At most, Mr. Forrest has pointed to two remote disciplinary actions (neither of which were related to his use of FMLA leave) and an unsubstantiated suggestion that, because he was in charge of a larger number of commodities than his co-workers, his workload was greater than his colleagues' workloads. Mr. Forrest's evidence and argument is insufficient as a matter of law to establish

---

[15] This standard differs somewhat from the standard applicable to discrimination claims. *See Muldrow*, 601 U.S. at 348 (recognizing that the harm required to establish a retaliation claim is different than the harm required to establish a discrimination claim).

No. 22-cv-427

that he was subjected to an adverse employment action. *See Ford*, 2023 WL 5606233, at *6 (holding that the plaintiff failed to meet his prima facie burden of "articulating a qualifying adverse action" because, even though the plaintiff was issued letters of discipline and a notice of separation, the letters and notice "did not relate to his use of FMLA leave"). Because Mr. Forrest cannot demonstrate this essential component of his prima facie case, Zeeco is entitled to summary judgment on Mr. Forrest's FMLA-retaliation claim.

E

Finally, Mr. Forrest cannot recover on his FMLA-interference claim. "To establish a claim of FMLA interference . . . an employee must show (1) that [he] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (citation and quotation marks omitted). Mr. Forrest cannot establish the second element of his claim. The only specific conduct challenged by Mr. Forrest is (1) Zeeco's alleged failure to re-notify him of his FMLA rights, and (2) Zeeco's decision to "accept[ ] his resignation" even though Zeeco was in possession of information that "may have qualified [Mr. Forrest] for an FMLA leave of absence." Dkt. 40 at 24. Neither of the two challenged actions constitute actionable interference, which is ordinarily established by evidence that the employer prevented the employee from taking the full amount of leave available, refused to permit the employee to take leave, or refused to reinstate the employee following leave. *See Dalpiaz*, 760 F.3d at 1132; *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). There is no evidence or allegation that Zeeco refused to allow Mr. Forrest to take leave under the FMLA; to the contrary, the undisputed evidence shows that Zeeco never denied any of Mr. Forrest's requests to take time off work for medical purposes and never reprimanded him for being absent. *See* Dkt. 38 at 9. The record is devoid of any evidence that Zeeco prevented Mr. Forrest from

No. 22-cv-427

taking leave available to him under the FMLA and, as a result, Mr. Forrest's retaliation claim cannot proceed.

V

For the reasons set forth above, Mr. Forrest's OADA claims are time-barred, and Mr. Forrest has failed to present evidence that, if true, would permit a jury to find in his favor with respect to his ADA and FMLA claims. Zeeco is entitled to judgment as a matter of law on all Mr. Forrest's claims, and its motion for summary judgment [Dkt. 38] is granted.

DATED this 23rd day of September 2025.

JOHN D. RUSSELL
*United States District Judge*